IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARLENE J. KEMERER,           )
    Plaintiff               )
                                  )
        v.               )      Civil Action No. 08-167
                                  )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
    Defendant.              )

MEMORANDUM AND ORDER

MITCHELL, M.J.

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's Motion for Summary Judgment (Docket No.11) will be denied; the defendant's Motion for Summary Judgment (Docket No.14) will be granted; the decision of the Commissioner of Social Security will be affirmed and judgment will be entered accordingly.

On February 6, 2008, Darlene J. Kemerer, by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed an application for disability and supplemental security income benefits on February 18, 2005 (R.56-58, 378-381). Benefits were denied on September 12, 2005 (R30-34). On November 9, 2005, the plaintiff requested a hearing (R.37), and pursuant to that request a hearing was conducted on August 22, 2006,(R.388-444). In a decision filed on January 26, 2007,

an Administrative Law Judge denied benefits (R.11-28). On March 1, 2007, the plaintiff

requested reconsideration of this determination (R.10A), and upon reconsideration, and in a

decision dated January 11, 2008, the Appeals Council affirmed the prior decision (R.6-8). The

instant complaint was filed on February 6, 2008.

In reviewing an administrative determination of the Commissioner, the question before

any court is whether there is substantial evidence in the agency record to support the findings of

the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she

was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389

(1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the
> record, a judgment affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without remanding the cause for a
> rehearing. The findings of the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v.

NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel,

186 F.3d 422 (3d Cir. 1999).

At the hearing held on August 22, 2006 (R.388-444), the plaintiff appeared with counsel

(R.390), and testified that she was forty-seven years old (R.392); that she graduated from high

school and completed three and a half years of college (R.392-393); that she is married and her

husband receives disability benefits (R.395); that she worked as a school bus driver and

housekeeper (R.396, 415) and that she received unemployment benefits until February 2004 (R.395).

The plaintiff also testified that she is being treated for depression, diabetes, fibromyalgia and diabetic neuropathy (R.397, 399, 400); that she takes medication for her conditions which make her sleepy and that she sleeps for about eighteen hours a day (R.403, 406, 407, 421-423); that she cannot walk a block and can lift about five pounds (R.410, 413); that she does not leave her home (R.411) and that she requires help attending to her personal needs (R.412, 418).

The plaintiff's husband testified (R.428-439) that his wife had been an active person (R.428-429); that she does very little around the house; that he helps with household chores (R.430-433) and that the plaintiff sleeps a lot (R.430).

At the hearing a vocational expert was called upon to testify (R.439-443). He characterized the plaintiff's prior work as semiskilled medium work with no transferable skills (R.440). The witness was asked to assume an individual with the plaintiff's education, training and prior work experience who was limited to light work activity and testified that there were a large number of positions such an individual could perform (R.440-441). The same was true if that individual was limited to sedentary work (R.441-442). However, if there were a number of absences, he testified such an individual could not be employed (R.442).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was hospitalized at the Westmoreland Regional hospital from January 6, 2003 through January 9, 2003 for diabetic ketoacidosis precipitated by viral gastroenteritis (R.105-111).

The plaintiff had a stress test and myocardial perfusion scan performed at Frick Hospital on March 16, 2003 which did not disclose the existence of any problems (R.170-183).

The plaintiff was hospitalized at the Westmoreland Regional hospital from August 14, 2003 through August 16, 2003 for diabetic ketoacidosis. She was placed on an insulin regime (R.112-1124).

A normal electro-physiological study was reported on June 10, 2004 (R.125-126).

In a report covering the period from May 17, 2001 through October 7, 2004, Edward T. Brajdic, O.D. reported no visual impairments (R.184-186).

The plaintiff attended physical therapy between July 9, 2004 and September 22, 2004 and again from November 8, 2004 through January 19, 2005 for bilateral shoulder capsulitis (R.127-139).

The plaintiff was treated at the Westmoreland Hospital emergency room on January 30, 2005 for abdominal pain, vomiting and fever which were determined to be non-serious (R.147-169).

The plaintiff was treated by Dr. Gregory A. Bisignani between September 21, 2004 and February 1, 2005 for shoulder pain and adhesive capsulitis. With physical therapy and exercise, the plaintiff's condition improved (R.140-146).

In a report of a psychological consultation which occurred on March 30, 2005, Dennis W. Kreinbrook, Ph.D. diagnosed a recurrent depressive disorder. He noted that the plaintiff was receiving appropriate medical treatment and would benefit from psychotherapy. The plaintiff's impairments were reported to be slight (R.187-194).

The plaintiff was treated at Westmoreland Hospital on April 15, 2005 for a gastric ulcer. An endoscopy was performed (R.195-201).

The plaintiff was hospitalized at Westmoreland Hospital from May 16, 2005 through May 18, 2005 for bleeding internal hemorrhoids, anemia, diabetes, depression, hyperlipidemia and irritable bowel disease. A hemorrhoidectomy was performed (R.202-208).

The plaintiff was hospitalized at the Westmoreland Regional hospital from May 27, 2005 through May 31, 2005 primarily for pneumonia (R.209-227).

The plaintiff was treated by Dr. Lee J. Harmatz between May 26, 2004 and June 13, 2005 for anemia, diabetes, hypertension, hyperlipidemia and depression (R.228-267).

A psychiatric review completed on June 22, 2005 noted a depressive disorder which though mild to moderate was not limiting and reported not to meet the requirements for a disability showing (R.268-283).

The plaintiff received outpatient treatment at Westmoreland Hospital between July 7, 2005 and July 20, 2005 where an endoscopy was performed and demonstrated a normal esophagus, stomach and duodenum although there was evidence of residual gastritis (R.284-289).

The plaintiff was treated by Dr. Mani Basham between August 26, 2004 and July 28, 2005 for diabetes (R.290-309).

After reviewing the medical evidence and in a residual functional capacity assessment completed on August 25, 2005, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.310-316).

The plaintiff was treated by Dr. Lee J. Harmatz between June 21, 2005 and April 1, 2006 for a left axilla boil, anemia, diabetes, bronchitis, hyperlipidemia and depression (R.317-341).

The plaintiff was treated at the Westmoreland Hospital Comprehensive Counseling Center between November 8, 2005 and May 19, 2006 for fatigue and lack of motivation. A diagnosis of major depressive disorder in partial remission was made (R.342-357).

The plaintiff was treated by Dr. Lee J. Harmatz between May 20, 2006 and May 24, 2006 for anemia, diabetes, bronchitis and a right axilla abscess (R.359-366).

The plaintiff was treated by Dr. Mani Basham between July 28, 2005 and August 8, 2006 for diabetes (R.367-377).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength

he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The medical evidence shows that the claimant is chronically obese with a history of diabetes mellitus and associated neuropathy... in August 2004 ... a treating endocrinologist, confirmed that the claimant had only mild peripheral neuropathy.

* * *

As to mental impairments, the medical evidence shows that the claimant has a depressive disorder...

As to activities of daily living, there are mild limitations...

As to social functioning, there are moderate limitations...

As to concentration, persistence or pace, the evidence shows that the claimant has moderate limitations but that she retains the ability to perform simple, routine, repetitive job tasks...

[I]t is initially noted that the claimant has not required any psychiatric hospitalization. Moreover, her mental impairments appear to be adequately controlled with psycho tropic medication and psychiatric medication management...

[There is no evidence that the claimant has experienced repeated episodes of decompensation of an extended duration. There is also no evidence of a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or changes in the environment would cause an

episode of decompensation. Moreover, there is no evidence of an inability to function outside of a highly supportive living arrangement.

* * *

The clinical and objective findings are also inconsistent with an individual experiencing totally debilitating symptomatology. There is no evidence on physical examination of any significant motor or sensory loss, reflex abnormality or disturbance of gait. Moreover, as to the claimant's diabetes mellitus, the claimant has not sustained any further episodes of ketoacidosis since January 2003, when she was reluctant to begin an insulin regimen because it would cause her to be dismissed from her job as a bus driver, and August 2003, when she stopped taking her medication. In addition, in June 2004 an electrophysiological study of the upper extremities was normal.

* * *

The claimant has alleged that she experiences chronic, severe back/tailbone pain and whole body pain ... It is further noted that the claimant has not required any emergency room care/hospital confinement or surgical intervention for a back/tailbone disorder or any other musculoskeletal condition...

With regard to further assessing the claimant's credibility ... the clinical and objective findings rebut the claimant's contention that she is totally disabled from all forms of gainful employment. While her discomfort may restrict very strenuous physical exertion, it does not preclude all work activity.

* * *

[I]t is initially noted that although Dr. Bashyam indicated that the claimant's diabetes mellitus was poorly controlled, he nonetheless reported that there had been no new changes on physical examination...

[I]t is noted that [the opinions of Dr. Kreinbrook] appear to be primarily based on the claimant's subjective complaints, alone, rather than on any objective and clinical findings.

* * *

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate... (R.18-27).

The record demonstrates that while the plaintiff suffers from diabetes, her condition is generally stable. She also suffers from systemic pain, however, the degree of the severity she alleges is not supported by the evidence of record. In a similar manner, while she does experience some mental condition, it is not severely limiting on her ability to be gainfully employed. Thus, considering all the evidence of record, it would appear that the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff.

An appropriate Order will be entered.

Dated: August 6, 2008                                    s/Robert C. Mitchell,
                                                         United States Magistrate Judge

ORDER

AND NOW, this 6th day of August, 2008, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the plaintiff's Motion for Summary Judgment (Docket No.11) is denied;

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment (Docket No.14) is granted,

AND IT IS FURTHER ORDERED that the decision of the Commissioner of Social Security is affirmed.

s/ Robert C. Mitchell,
United States Magistrate Judge